**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON**

**CARL EUGENE MANFORD,**

      **Plaintiff,**

**v.**                                **Case No. 2:13-cv-07562**

**DEPARTMENT OF MILITARY AFFAIRS as
MOUNT OLIVE CORRECTIONAL COMPLEX as
DAVID BALLARD, Warden,
WEXFORD HEALTH SOURCES, INC. and
BETH ESTEP,**

      **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATION

On March 8, 2013, the plaintiff filed a Complaint under 42 U.S.C. § 1983 in the United States District Court for the Northern District of West Virginia. The complaint contains allegations concerning the plaintiff's medical care for a hernia at the Mount Olive Correctional Complex, which is located within the Southern District of West Virginia (ECF No. 2.) Accordingly, this matter was transferred to this court and assigned to the Honorable John T. Copenhaver, Jr., United States District Judge.

Pending before the court are the following motions: the Motion to Dismiss filed by David Ballard (ECF No. 20), the Motion to Dismiss filed by the Department of Military Affairs (ECF No. 22), the Motion to Dismiss filed by Beth Estep and Wexford Health Sources, Inc. (ECF No. 24) and the plaintiff's Motion for Injunctive Relief (ECF No. 14). Pursuant to a Standing Order entered on April 8, 2013, this matter is referred

to the undersigned United States Magistrate Judge for submission of proposed findings

and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

### THE PLAINTIFF'S ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff's Complaint alleges that he is being denied adequate medical

treatment in violation of his constitutional right to be free from cruel and unusual

punishment.  The Complaint specifically states:

> The prison, by Warden David Ballard and Wexford, by Asst. Dir. Beth
> Estep are denying me corrective surgery for a hernia that has now
> entangled and has put me in imminent danger of serious physical harm.
> Even a layperson can see.  I am being denied surgery until it strangulates
> which may even cause death.
>
> * * *
>
> Unable to walk – exercise.  The defendants et al. have created a "cruel and
> unusual punishment" (8th Amend, U.S. Const.) by "negligence" –
> "deliberate indifference" and willful disregard for serious medical need
> and life.  [Citations omitted].
>
> * * *
>
> I began being diagnosised [sic; diagnosed] with a hernia on Sept. 10.  Now
> it is entangled.  I am in constant pain.  My life is very limited.  Told I must
> wait until it strangulates.  This is unreasonably putting my life at risk.

(ECF No. 1 at 8-9.)  The plaintiff seeks injunctive relief, in the form of the corrective

surgery being ordered, and monetary damages.  (*Id.* at 9.)

The plaintiff has named the West Virginia Department of Military Affairs

("DMA"), the Mount Olive Correctional Complex ("MOCC")[1], and David Ballard, the

Warden of MOCC as defendants herein.   The plaintiff is also suing Wexford Health

Sources, Inc. ("Wexford") and Beth Estep ("Estep"), who is listed as its Assistant

---

[1]  MOCC is not a suable entity.  It is a facility operated by the West Virginia Division of Corrections, which
is, in turn, an agency within the DMA. As will be explained *infra*, the DMA is also not a suable entity
under 42 U.S.C. § 1983.

2

Director (collectively "the Wexford Defendants").  The plaintiff's Complaint specifies that he is suing the defendants in both their individual and official capacities.

Following service of process, on June 24, 2013, defendant Ballard filed a Motion to Dismiss Complaint (ECF No. 20) and a Memorandum of Law in support thereof (ECF No. 21).  On June 26, 2013, the DMA filed a Motion to Dismiss Complaint (ECF No. 22) and a Memorandum of Law in support thereof (ECF No. 23).  On June 28, 2013, defendants Estep and Wexford filed a Motion to Dismiss Complaint (ECF No. 24) and a Memorandum of Law in support thereof (ECF No. 25).

On July 12, 2013, the undersigned entered an Order advising the plaintiff of his right to respond to the defendants' motions.  (ECF No. 26).  On August 8, 2013, the plaintiff filed a motion requesting a temporary stay of these proceedings on the basis that the plaintiff was in the hospital recovering from surgery (not directly related to the hernia about which he complains in his Complaint).  (ECF No. 28).  The plaintiff requested a stay until he could return to the general population at the prison, or for sixty (60) days.

On September 18, 2013, the plaintiff filed additional documentation in support of his Complaint (ECF No. 30), and on November 5, 2013, the plaintiff filed a response to the Motion to Dismiss filed by defendants Estep and Wexford (ECF No. 31), and a response to the Motion to Dismiss filed by the Department of Military Affairs, which also appears to address the conduct of and Motion to Dismiss filed by defendant Ballard (ECF No. 32).

On November 12, 2013, defendants Estep and Wexford filed a reply brief.  (ECF No. 33).  On December 3, 2013, the plaintiff filed a sur-reply concerning Estep and Wexford's motion.  (ECF No. 34).   This matter is ripe for review.

## STANDARD OF REVIEW

The defendants have each filed a motion to dismiss the plaintiff's Complaint for failure to state a claim upon which relief can be granted, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to construe liberally such complaints.  However, in *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007), the Supreme Court observed that a case should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face."  While the complaint need not assert "detailed factual allegations," it must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Supreme Court elaborated on its holding in *Twombly* in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), a civil rights case.  The Court wrote:

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. [*Twombly*, 550 U.S.] at 555, 127 S. Ct. 1955 (Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we "are not bound to accept as true a legal conclusion couched as a factual allegation" (internal quotation marks omitted).  Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  *Id.*, at 556.
> * * *
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded

factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

129 S. Ct. at 1949-50.

## ANALYSIS

### A.    The Motion to Dismiss filed by Estep and Wexford.

#### *Deliberate indifference claim*

The plaintiff asserts that the defendants have been deliberately indifferent to his serious medical needs by denying him corrective surgery for his hernia, and that such conduct violates his right to be free from cruel and unusual punishment under the Eighth Amendment.

In *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" The Supreme Court emphasized that "[p]rison conditions may be 'restrictive and even harsh.'" *Id.,* at 833.

To sustain an Eighth Amendment claim, a prisoner must show two things: (1) "the deprivation must be, objectively, 'sufficiently serious;'" that is, "denial of 'the minimal civilized measure of life's necessities;'" and (2) the prison official had a "'sufficiently culpable state of mind;'" that is, "'deliberate indifference' to inmate health or safety." *Id.,* at 834. (Citations omitted.) The Supreme Court rejected an argument that an objective test of deliberate indifference be established.

> We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from

which the inference could be drawn that a substantial risk of serious harm
exists, and he must also draw the inference.

*Id.*, at 837.  "In order to state a cognizable claim for denial of medical care under the
Eighth Amendment, an inmate must allege facts sufficient to demonstrate a deliberate
indifference to a serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

"To establish that a health care provider's actions constitute deliberate
indifference to a serious medical need, the treatment must be so grossly incompetent,
inadequate, or excessive as to shock the conscience or to be intolerable to fundamental
fairness*." Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990); *see also Rogers v. Evans*,
792 F.2d 1052, 1058 (11th Cir. 1986) (collecting cases).  "Serious medical needs" are
those which have been diagnosed by a physician as mandating treatment or that are so
obvious that even a lay person would easily recognize the necessity for a doctor's
attention. *Gaudreault v. Munic. of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990).

> Deliberate indifference may be demonstrated by either actual intent or
> reckless disregard.  *See Benson v. Cady*, 761 F.2d 335, 339 (7th Cir. 1985).
> A defendant acts recklessly by disregarding a substantial risk of danger
> that is either known to the defendant or which would be apparent to a
> reasonable person in the defendant's position.  *See id.*  Nevertheless, mere
> negligence or malpractice does not violate the Eighth Amendment.  *See
> Estelle*, 429 U.S. at 106.

*Miltier*, 896 F.2d at 851-852.

The burden of demonstrating deliberate indifference to a serious medical need by
correctional officials and health care providers is very high.  It is well settled that:

> A medical need serious enough to give rise to a constitutional claim
> involves a condition that places the inmate at a substantial risk of serious
> harm, usually loss of life or permanent disability, or a condition for which
> lack of treatment perpetuates severe pain.  *See Farmer*, 511 U.S. at 832-35;
> *Sosebee v. Murphy*, 797 F.2d 182-83 (4th Cir. 1986); *Loe v. Armistead*,
> 582 F.2d 1291, 1296-97 (4th Cir. 1978).

*Rush v. VanDevander*, 2008 WL 495651 (W.D. Va., Feb. 21, 2008); *Banks v. Green*

6

*Rock Correctional Center Medical Dept.*, 2007 WL 2903673 (W.D. Va., Oct. 3, 2007). For example, in *Sosebee*, the Fourth Circuit found that if prison guards were aware that a steak bone had pierced an inmate's esophagus, causing infection that resulted in the inmate's death, and the guards had intentionally abstained from seeking medical help, such conduct <u>might</u> establish deliberate indifference to a serious medical need.

In *Webster v. Jones*, 554 F.2d 1285 (4th Cir. 1977), the plaintiff, who had complained numerous times of eye problems and loss of vision, claimed that he was cursorily examined after his initial complaint, but never re-examined despite later complaints. The doctor claimed that he examined Webster several times, but never diagnosed a medical problem with his eye. *Id.* at 1286. Subsequently, a specialist found that Webster's vision had deteriorated to 20/400 and that he suffered from a detached retina and iritis, and that his vision could not be restored. *Id.* The Fourth Circuit found that, even if the doctor had been negligent in failing to properly diagnose or treat Webster, negligence is not sufficient to demonstrate deliberate indifference to a serious medical need and, thus, Webster's allegations did not constitute a cognizable constitutional claim. *See also, Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998).

Likewise, disagreements between a health care provider and the inmate over a diagnosis and the proper course of treatment are not sufficient to support a deliberate indifference claim, and questions of medical judgment are not subject to judicial review. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975). As noted by the Fourth Circuit, an inmate is not entitled to unqualified access to health care and treatment may be limited to what is medically necessary and not "that which may be considered merely desirable" to the inmate. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977).

7

The Motion to Dismiss filed by the Wexford Defendants asserts that, even taking the plaintiff's allegations as true, they cannot meet either the objective or subjective components of this standard.  The Wexford Defendants' Memorandum states:

> The Plaintiff attached the decisions from the grievances.  It notes, "Per A. Kincaid, RN, you have been evaluated by the [physician's assistant] or MD (7/24, 7/31, 8/13) and they have determined based on their assessment that there is no clinical indication for an outside referral at this time and conservative treatment is appropriate at this time.  Follow-up if your condition changes or worsens."  The Plaintiff's Complaint simply alleges his unsupported contention that surgery is required for his hernia.  His Complaint shows that he he has been provided with treatment on multiple occasions for his complaints of a hernia.  Instead of showing deliberate indifference, his Complaint shows a disagreement between an inmate and his doctor over the appropriate course of treatment for his medical condition.  As such, he has failed to allege facts sufficient to state a claim.  Therefore, dismissal is appropriate.

(ECF No. 25 at 2).

The Wexford Defendants emphasize that "a cognizable claim under the Eighth Amendment is not raised when the allegations reflect a mere disagreement between an inmate and a physician over the inmate's proper medical care," *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir, 1985), and "it must be shown that the treatment was 'so grossly incompetent, inadequate or excessive as to shock the conscience or be intolerable to fundamental fairness.'"  *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990) [other citations omitted].  (ECF No. 25 at 5).  The Wexford Defendants note that the plaintiff "cannot insist that his institutional host provide him with the most sophisticated care money can buy."  *United States v. DeCologero*, 821 F.2d 39, 42 (1st Cir. 1987).  (*Id.*)  The Wexford Defendants' Memorandum further argues:

> The Plaintiff's allegations in his Complaint demonstrate that he was provided treatment for his complaints.  He simply avers that, rather than the conservative treatment he has received, he should be provided with corrective surgery.  As noted in the grievances attached to the Complaint, Wexford has not foreclosed the possibility of surgery in the future, only

8

that it was not indicated at this time.  This is a determination made by the physician and the physician's assistant after examination.  The Plaintiff has not alleged facts sufficient to demonstrate that the treatment by Wexford is negligent much less that Wexford was deliberately indifferent to a serious medical condition.  Therefore the Plaintiff has failed to allege facts sufficient to state a claim for an Eighth Amendment violation.

(*Id.* at 6).

### *Potential negligence claim*

The Wexford Defendants also assert that, to the extent that the plaintiff's Complaint is alleging that the defendants' conduct constitutes negligence or medical malpractice, which does not rise to the level of a constitutional violation, the plaintiff has failed to satisfy the pre-requisites of the West Virginia Medical Professional Liability Act ("MPLA"), 55-7B-6, which requires a person bringing a medical malpractice action to serve a notice of claim and a screening certificate of merit from a qualified expert health care provider indicating that a defendant's conduct violated the applicable standard of care, which resulted in injury to the plaintiff.  *See Boggs v. Camden-Clark Memorial Hosp. Corp.*, 609 S.E.2d 917 (W. Va. 2004); *Davis v. Mound View Health Care, Inc.*, 640 S.E.2d 91 (W. Va. 2006).  (ECF No. 25 at 6-9).  The Wexford Defendants' Memorandum states in pertinent part:

> In essence, the MPLA applies to any claim for damages resulting from any tort based on any act performed by a person or corporation during the plaintiff's medical care, treatment or confinement.  The Plaintiff's Complaint alleges that these Defendants committed various acts of medical negligence.  Yet, the Plaintiff failed to provide a pre-suit notice of claim and failed to submit a screening certificate of merit.  Without providing the Defendants with pre-suit notice and a screening certificate of merit by qualified expert, Plaintiff's allegations of medical malpractice must be dismissed pursuant to *W. Va. Code* § 55-7B-6.

(*Id.* at 8-9).

*The plaintiff's response*

On November 5, 2013, the plaintiff filed a Response to the Wexford Defendants' Motion to Dismiss.  (ECF No. 31).  The plaintiff's response indicates that he had been hospitalized for surgery on some sort of mass in his back and treatment for a deep bone infection, which caused his delay in responding to the defendants' motions.[2]   The plaintiff's response further indicates that, as of November 5, 2013, he has not had corrective surgery for his hernia, despite two of Wexford's physicians now indicating that surgery is necessary.[3]  (*Id.* at 1-2.) The plaintiff further indicates that he is in daily pain, with no medication for pain management.  (*Id.*)  The plaintiff also asserts that defendants Estep, Ballard and the DMA should be held liable under a theory of "vicarious liability."  (*Id.* at 3-4.  The plaintiff asserts that his allegations satisfy the elements necessary to survive a motion to dismiss.  (*Id.*)

*The Wexford defendants' reply*

On November 12, 2013, the Wexford Defendants filed a reply brief.  (ECF No. 33), which asserts that the plaintiff has acknowledged that he has received on-going treatment for a variety of medical conditions, including outside hospitalization and surgery on his back.  The defendants reiterate their belief that the plaintiff has alleged no more than a disagreement with his physician's recommended conservative treatment of his hernia, which does not rise to the level of a constitutional violation.  (*Id.* at 1-2). The Wexford Defendants also reiterate their argument that the plaintiff's negligence claim is jurisdictionally barred.  (*Id.* at 2).

---

[2]  By separate Order, the undersigned has granted the plaintiff's Motion to Stay (ECF No. 28), which the undersigned treated as a Motion for Extension of Time to File a Response to the defendant's motions. Accordingly, the undersigned will treat the plaintiff's response as being timely.

[3]  The plaintiff has not produced any documentation or other evidence to support his assertion that "both Wexford Doctor[s] say that surgery is necessary."  (ECF No. 31 at 2, ¶ 6).

*The plaintiff's sur-reply*

On December 3, 2013, the plaintiff filed a sur-reply (ECF No. 34), which is not permitted under the rules, without permission of the court. The sur-reply argues that the Wexford Defendants are essentially "ADMITTING that they are committing a grievous wrong by the treatment they are giving to this Plaintiff under the MPLA guidelines, which itself established 'deliberate indifference to a serious medical need' as alleged by Plaintiff." (*Id.* at 1). The plaintiff's sur-reply also attempts to address new evidence indicating that the plaintiff is in so much pain, that he cannot go to the dining hall to retrieve his meals. Thus, his food is being delivered to him in his housing unit. The plaintiff also asserts that he must wear sweat pants instead of uniform pants due to the enlargement of his groin. (*Id.* at 2). The plaintiff asserts that the defendants have done absolutely nothing to resolve the plaintiff's problems in over six months, which he alleges constitutes deliberate indifference and serves as notice to the defendants of the plaintiff's condition for purposes of the notice requirement under the MPLA. (*Id.*)

Based upon the facts alleged in the Complaint and other documentation, it appears that the plaintiff has been seen on a regular basis and has received treatment for a variety of medical conditions. The plaintiff has voiced his dissatisfaction with the defendants' judgment to treat his hernia conservatively and the potential for surgery has not been ruled out. Thus, the plaintiff has alleged nothing more than a disagreement with the course and timing of his treatment.

Taking the plaintiff's allegations as true, and in the light most favorable to the plaintiff, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff has not sufficiently alleged that Beth Estep or any other Wexford employee acted with deliberate indifference to his serious medical needs. The undersigned further

proposes that the presiding District Judge **FIND** that the plaintiff has failed to satisfy the jurisdictional pre-requisites of the MPLA in order to state a negligence or medical malpractice claim against the Wexford Defendants.

Accordingly, for the reasons stated herein, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against Beth Estep or Wexford Health Sources, Inc.

### B.    The Motions to Dismiss filed by the DMA and Ballard.

In his Complaint, the plaintiff also alleges that the DMA and Ballard contracted with Wexford to provide medical services at MOCC and that these defendants are ultimately responsible to ensure that he receives appropriate treatment.  (ECF No. 1 at 2.)   Aside from discussing Warden Ballard's duty to review his grievance (which, according to the copy that is attached to the Complaint, was denied by Jason Collins, as Acting Warden on August 22, 2012, see ECF No. 1-1 at 1), the Complaint makes no further mention of Warden Ballard or the DMA.

### *Official capacity claims and Eleventh Amendment immunity*

The DMA's Motion to Dismiss (ECF No. 22) and Memorandum in support thereof (ECF No. 23) assert that the plaintiff's Complaint against the DMA must be dismissed because the plaintiff is seeking retroactive monetary relief from a state agency, which is prohibited under the Eleventh Amendment to the United States Constitution.  The DMA further asserts that it is not a "person" as defined under 42 U.S.C. § 1983 and, thus, is not suable thereunder.  Defendant Ballard's Motion to Dismiss (ECF No. 20) and Memorandum in support thereof (ECF No. 21) make similar arguments to the extent that Ballard is sued in his official capacity as Warden at MOCC. (ECF No. 21 at 4-5).

The power of the federal judiciary does not extend to suits by a citizen of one state against another, or to suits by a citizen against his or her own state. *Hans v. Louisiana*, 134 U.S. 1, 9 (1980). The Eleventh Amendment of the United States Constitution bars a suit in a federal court by private parties seeking to impose a liability upon a State or State officials, which may be paid from public funds in the state treasury. *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Absent consent, federal suits against a state by a citizen of that state or another state are prohibited by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 199 (1985); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99-100 (1984).

Furthermore, the Supreme Court and the United States Court of Appeals for the Fourth Circuit have found that "neither a State not its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989); *Preval v. Reno*, 203 F.3d 821 (4th Cir. 2000) (unpublished).

In *Will*, the Supreme Court stated:

> Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. We see no reason to adopt a different rule in the present context, particularly when such a rule would allow petitioner to circumvent congressional intent by a mere pleading device.

> We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983. The judgment of the Michigan Supreme Court is affirmed. [Citations omitted].

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the plaintiff's claims against the DMA and David Ballard, the Warden of MOCC, in his official capacity, are barred by the Eleventh Amendment to the United States Constitution and the *Will* Doctrine.

<u>*Claim against Ballard in his individual capacity*</u>

Turning to the plaintiff's claim against defendant Ballard in his individual capacity, Ballard's motion contends that he is entitled to qualified immunity from any monetary liability.  As noted by defendant Ballard:

> "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 141 F.3d 111, 114 ([4th Cir.] 1998); *Lifeline v. Wireman et al.*, 2012 U.S. App. LEXIS 2290 (4th Cir. 2012).  "Qualified immunity protects officers who commit constitutional violations but, who, in light of clearly established law, could reasonably belie their actions were lawful." *Henry v. Parnell*, 652 F.3d 524, 531 (4th Cir. 2011).

(ECF No. 21 at 5).  Public officials are not liable for monetary damages if they can show that their conduct did not violate clearly-established statutory or constitutional rights of which a reasonable person would have known.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999).  Qualified immunity exists to protect officers in the performance of their duties unless they are "plainly incompetent" or they "knowingly violate the law." *Doe v. Broderick*, 225 F.3d 440, 446 (4th Cir. 2000).

In ruling on an issue of qualified immunity, a court must consider this threshold question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  If the allegations do not give rise to a constitutional violation, no further inquiry is necessary.  *Id.*  If, on the other hand, a violation can be shown, then the court must determine whether the right was clearly established in the specific context of the case.  *Id.*

It is well-settled that prison officials are entitled to rely upon the professional judgment of trained medical personnel.  *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir.

1990); *Shakka v. Smith*, 71 F,3d 162, 167 (4th Cir. 1995).  Thus, to establish a claim of deliberate indifference against non-medical prison personnel, a plaintiff must demonstrate that the official was personally involved in the treatment or denial of treatment, or that they deliberately interfered with the treatment, or that they tacitly authorized or were indifferent to the medical provider's misconduct.  *Miltier*, 896 F.2d at 853.

Defendant Ballard's Memorandum emphasizes that the plaintiff "has failed to articulate any facts against him that demonstrate that he engaged in any acts or omissions that were deliberately indifference and created an excessive risk of harm to the plaintiff's health or safety."  (ECF No. 21 at 6).  The Memorandum further states:

> Defendant Wexford provided its medical rationale for its decision surrounding the medical treatment provided to the Plaintiff.  Defendant Ballard is not a physician, he does not provide medical treatment to inmates, and the employees of MOCC promptly addressed Plaintiff's grievance regarding his medical treatment.  Defendant Ballard is entitled to dismissal from this suit on the basis of qualified immunity, because there are no facts articulated showing that he engaged in any unlawful conduct that violated the clearly established constitutional rights of Plaintiff.

(*Id.* at 6-7).

The plaintiff's Response to the DMA and Ballard's motions asserts that, although he has been seen "fairly regularly" by medical personnel, they refuse to do anything about his condition.  (ECF No. 32 at 2, ¶ 6).  He further alleges that he was scheduled for corrective surgery, but has since been told it was cancelled.  (*Id.*)  He attributes his other problems, for which he has had surgery, and for which he states he has spent more than 70 days in the hospital or infirmary, to his untreated hernia.  (*Id.* at 2, ¶ 7).  The plaintiff states that he is invoking the doctrine of "vicarious liability" to hold Ballard and Wexford responsible for the actions of their subordinates or employees.  (*Id.* at 3, ¶ 9).

15

However, government officials may not be held liable for the conduct of their subordinates under a theory of *respondeat superior* or "vicarious liability."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).  Thus, the plaintiff must establish any liability on the basis of defendant Ballard's own individual actions.  *Id.*

Moreover, because the plaintiff's Complaint has not sufficiently alleged deliberate indifference claims against the medical providers who treated him, he cannot sufficiently allege a deliberate indifference claim against defendant Ballard, who was entitled to rely upon the professional medical judgment of the health care providers when reviewing the plaintiff's grievances concerning his medical treatment. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that defendant Ballard should be accorded qualified immunity on the plaintiff's claim against him in his individual capacity.

For the reasons stated herein, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff's Complaint fails to state a claim upon which relief can be granted against defendants Ballard and the DMA.

### C.    The plaintiff's Motion for Injunctive Relief.

On May 29, 2013, the plaintiff filed a Motion for Injunctive Relief (ECF No. 14), in which he requested that, pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court require that the plaintiff be given corrective surgery for his hernia, or at least be taken to a hospital for a complete work-up by an internal medicine specialist.  A federal court's power to intervene in the internal operations of state agencies is limited. A court may grant equitable relief only where there is a real and immediate threat of injury, and prospective relief may only extend to the that necessary to correct a constitutional violation.  *See* 18 U.S.C. § 3626(a)(1)(A).

16

In 2009, the United States Court of Appeals for the Fourth Circuit revisited the applicable standard of review for preliminary injunctions in the case of *The Real Truth About Obama*, 575 F.3d 342 (4th Cir. 2009) (hereinafter "*Real Truth*"), in light of the Supreme Court's decision in *Winter v. Natural Resources Defense Counsel, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L. Ed.2d 249 (2008).  As noted by the *Real Truth* Court:

> A preliminary injunction is an extraordinary remedy afforded prior to trial at the discretion of the district court that grants relief *pendente lite* of the type available after the trial.  *See In re Microsoft Corp. Antitrust Litig.*, 333 F.3d 517, 524-26 (4th Cir. 2003); *see also De Beers Consol. Mines, Ltd. V. United States*, 325 U.S. 212, 220-21, 65 S. Ct. 1130, 80 L. Ed. 1566 (1945).  Because a preliminary injunction affords, on a temporary basis, the relief that can be granted permanently after trial, the party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial. *Winter*, 129 S. Ct. at 376; *see also Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed.2d 162 (1997) (per curiam). * * *

> In its recent opinion in *Winter*, the Supreme Court articulated clearly what must be shown to obtain a preliminary injunction, stating that the plaintiff must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 129 S. Ct. at 374.  And all four requirements must be satisfied.  *Id.*  Indeed, the Court in *Winter* rejected a standard that allowed the plaintiff to demonstrate only a "possibility" of irreparable harm because that standard was "inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76.

575 F.3d 345-46.

The *Real Truth* decision emphasizes that "the *Winter* requirement that the plaintiff clearly demonstrate that [he] will likely succeed on the merits is far stricter than the [*Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977)] requirement that the plaintiff demonstrate only a grave or serious *question* for litigation." *Id.* at 346-47.  The *Real Truth* further distinguishes the *Winter*

standard from the old *Blackwelder* standard because it no longer requires the court to balance the harm to the respective parties, but rather requires the plaintiff to make a clear showing that he is likely to be irreparably harmed, and that the court must pay particular attention to the public consequences in employing the extraordinary remedy of an injunction.  The Court again emphasized that <u>all four</u> factors must be met in order to justify this extraordinary relief.  *Id.* at 347.  Thus, the Court stated that the standard articulated in *Winter* would henceforth govern the issuance of preliminary injunctions in the all federal courts.  *Id.*

Because the plaintiff has not successfully stated a claim upon which relief can be granted against any of the defendants, the undersigned further proposes that the presiding District Judge **FIND** that the plaintiff cannot clearly demonstrate that he is likely succeed on the merits of his claims, and, thus, there is no basis for this court to order the requested injunctive relief.

## <u>RECOMMENDATIONS</u>

Based upon the proposed findings contained herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the Motions to Dismiss filed by David Ballard (ECF No. 20), the West Virginia Department of Military Affairs (ECF No. 22) and Wexford Health Sources, Inc. and Beth Estep (ECF No. 24).  It is further respectfully **RECOMMENDED** that the presiding District Judge **DENY** the plaintiff's Motion for Injunctive Relief (ECF No. 14).

The plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the

plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Judge Copenhaver.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to the plaintiff and to transmit a copy to counsel of record.

January 14, 2014

Dwane L. Tinsley
United States Magistrate Judge